EDWARDS, Judge.
Defendant, Great American Transportation Corporation (GATX), appeals a judgment awarding plaintiff, Warren L. Nealy, $183.00 in weekly workers compensation for temporary total disability, penalties and attorney fees. Plaintiff has neither answered defendant’s appeal nor perfected an independent appeal.
Defendant argues that the trial court committed manifest error (1) in finding that plaintiff proved the occurrence of a compensable accident, (2) in awarding benefits from the date of the alleged accident rather than from the date of the manifested disability, and (3) in awarding penalties and attorney fees. We affirm the compensation award and reverse the award of penalties and attorney fees.
On December 31, 1981, Nealy was working for GATX in Good Hope, Louisiana, as a manual laborer in a tank reconstruction project. He and the other members of the crew — J.W. Davis, foreman, Robin Davis, pusher, Bobby Sykes, another laborer, and an unidentified tractor operator — were loading a freshly cut bottom of an old tank onto a truck with a boom and a tractor. The boom malfunctioned briefly, and Nealy, Sykes and Robin Davis climbed up onto the tractor to repair it. The day was cold, and a misting rain had muddied the ground around the truck and made the tractor slippery. After repairing the boom, Nealy jumped from the tractor, allegedly slipped and fell into the mud and allegedly twisted his knee.
Nealy finished work that day and returned after the New Year’s holiday for two more days’ work on the 5th and 6th of January, 1982. He did not work for GATX again until February 1, 1982. During the three-week interim, he was “loaned out” to another job in St. James Parish. That work lasted about four days — the precise dates of this job are unclear. He was laid off for the rest of January. Nealy worked the full first week in February and the following Monday, the 8th. He stopped working after the 8th and was unemployed as of the date of trial.
Nealy consulted Dr. Gadeaux, a general practitioner, some three weeks after the alleged accident — again, the precise date of the meeting is unclear. Dr. Gadeaux referred him to Dr. Neil J. Maki, an orthopedic specialist with whom he consulted on February 12 after receiving written permission from his foreman, J.W. Davis.
Dr. Maki’s examination revealed a tear to the midjoint of plaintiff’s left knee. Nealy was hospitalized on February 23 and underwent surgery on the 24th. He was rehospi-talized on March 5th due to minor complications and released March 11th. His rehabilitation proceeded without mishap except for a fall on May 16th, which caused a minor setback. According to Dr. Maki’s progress report, dated June 29, 1982, plaintiff was able to return to work “on an as tolerated basis,” subject to further examination by his treating physician.
Trial took place on July 29, 1982. Without assigning reasons or making specific findings of facts, the trial court rendered judgment in favor of plaintiff as set out above, the award to continue until plaintiff can return to work. Implicit in the judgment, however, is the finding that plaintiff suffered temporary total disability from a work-related accident. Whether plaintiff carried his burden of proving the occur *1134 rence of this accident is the primary issue on appeal.
Our constitutional authority to review findings of fact is limited by the standard of manifest error enunciated in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We cannot disturb a finding of fact when based upon a reasonable evaluation of credible evidence, sufficient to support a finding of the fact in issue, unless the record as a whole establishes that the finding is clearly wrong. Consequently, if Nealy’s proof of a compensable accident consists of sufficient and reasonably credible evidence, we cannot reverse the trial court’s finding absent manifest error.
Plaintiff’s proof that an accident occurred on December 31,1981, consisted solely of his own eyewitness testimony, corroborated by the testimonies of his wife, Debra, and his brother-in-law, Ed Ward. Nealy testified that he slipped or fell off the tractor and twisted his knee in the mud. He could not say with certainty that any member of the crew actually saw him fall. He testified that he did not report the fall immediately, but claimed that he told his foreman Davis about the fall later when Davis noticed him limping. He further claimed to have mentioned the incident to Ed Ward and Robin Davis later that day. He further testified that he did not ask to fill out an accident report because he didn’t think the injury to be that serious at the time. Finally, he testified that he continued to work until laid off, because he needed the money.
Ed Ward and Debra Nealy corroborated Nealy’s testimony. Debra testified that she applied ointments and salves to plaintiff’s knee when he returned home from work that day. Ed Ward testified that he noticed something was wrong with Nealy’s leg when he picked him up from work that afternoon. He testified that Nealy told him that he had been injured on the job. He further testified that he and Nealy usually did not bother with formal reports of which they considered to be only minor injuries.
Defendant’s proof that no accident occurred consisted of the testimonies of the foreman, J.W. Davis, the pusher, Robin Davis, and fellow laborer Bobby Sykes. The gist of Sykes’ and Robin Davis’ testimonies is that neither of them saw plaintiff fall from the tractor. Neither of them recalled seeing plaintiff limping nor remembered plaintiff’s mentioning to them anything about the accident until some time in February. Sykes testified that plaintiff told him some time in February that he was going to have surgery performed on his knee because of an injury on the job. Both testified that the weather conditions were cold and slippery.
J.W. Davis affirmatively testified that Nealy did not report the accident to him on December 31, 1982. He testified that he conducted mandatory weekly safety meetings in which he instructed all of the employees under his supervision to report any and all accidents however minor. He said he was first made aware of the accident on February 9th, as indicated in the accident report filled out and mailed to GATX on February 18, 1982. He further testified that he did not see plaintiff limping until some time in February, after plaintiff had been sent to the job in St. James Parish.
Cross-examination of each of the defendant’s witnesses revealed that all were unemployed at the time of trial, the tank reconstruction project having been completed the previous March. GATX had terminated J.W.’s employment because a previous accident in March of 1980, for which he had received a worker’s compensation settlement, had rendered him increasingly unable to function as a foreman. J.W. was negotiating with GATX at the time of trial to get his job back. He was only six years away from retirement. Cross-examination further revealed that Robin Davis was J.W.’s son. He was also looking to go back to work for GATX.
It appears that Nealy was the sole witness to the accident. However, his testimony alone is sufficient to establish the occurrence of an accident provided that his version of the event is not discredited by *1135 other credible evidence in the record and his testimony is corroborated by the circumstances surrounding the event. See Johnson v. Louisiana State University, 417 So.2d 467, 470 (La.App. 1st Cir.1982); Williams v. Offshore Food Services, Inc., 417 So.2d 475, 478 (La.App. 1st Cir.1982). Moreover,
the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry his burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture.
Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974) (citations omitted).
We have not the benefit of the trial court’s reasons for judgment as he assigned none. Nonetheless, we think that a reasonable evaluation of the evidence supports Nealy’s version of the accident. Cold, wet and muddy, the weather conditions on the day in question were ripe for the kind of accident encountered by the plaintiff, exposed to a risk of fall by virtue of his position as laborer. Moreover, plaintiff’s testimony was corroborated by that of his wife and his brother-in-law.
Despite J.W.’s insistence that he was not told of the incident and that he would have remembered it if he had, it is reasonable to infer that Davis simply forgot or that given plaintiff’s own casual attitude about the injuries at the time, Davis did not consider the incident to be serious. The fact that Nealy did not ask to fill out a formal report until February 9th does not discredit his testimony that the accident in fact occurred five weeks earlier. Nealy explained that at the time he thought the injury was only minor and that he continued to work in pain because he needed the money. Finally, given the Davis’ relationship with GATX, suggesting a possible influence on their testimony, it would not be unreasonable to give greater credence to Nealy’s version than to the defendant’s witnesses’.*
Therefore, we find no manifest error in the judgment awarding plaintiff $183.00 per week in compensation benefits until such time as plaintiff can return to work. The evidence in the record supports a finding that plaintiff proved by a preponderance a compensable accident.
Moreover, the trial court did not err in awarding benefits from the date of the accident rather than from the date of the disability. Although the defendant has not raised the issue of causation, we think that proof of the accident event reasonably supports a finding that plaintiff’s disability resulted therefrom. Since plaintiff’s disability has persisted for more than six weeks after the date of the accident, compensation is payable from that date. See LSA-R.S. 23:1224.
However, the evidence does not support a finding that GATX was “arbitrary, capricious, or without probable cause” in refusing payment within the meaning of LSA-R.S. 23:1201.2. Defendant was not notified of the accident until nearly six weeks after the event. Plaintiff was the sole witness of the accident, and his co-employees’ testimony cast a reasonable doubt on plaintiff’s claim to justify defendant’s denial of liability. According to Crooks v. Belden Corporation, 334 So.2d 725, 727 (La.App. 3rd Cir.1976), “the penalty provided by the statute is very harsh and should not be imposed in doubtful cases. Where there is a bona fide dispute as to the occurrence of the accident ... an employ *1136 er’s refusal to pay benefits is in good faith and with just cause.”
For the foregoing reasons, we affirm the compensation award and reverse the award of penalties and attorney fees. All costs of these proceedings are assessed to the appellant.
AFFIRMED IN PART; REVERSED IN PART.

 Defendant contends that plaintiffs introduction into evidence of Dr. Maki’s progress report and progress letters to his attorney in lieu of medical testimony and his failure to call his co-employees give rise to the presumption that such testimony would have been unfavorable to the plaintiffs case. The issue before us is whether plaintiff proved an accident. His treating physician had no particular information that could shed light on whether or not an accident occurred, since he was not an eyewitness to the event. Moreover, plaintiffs co-employees did in fact testify at trial. Thus, we think the presumption is inapplicable. See Morgan v. Matlock, Inc., 366 So.2d 1071, 1074 (La.App. 1st Cir.1979).